The next case is number 13-14-36 in Re Murkowski. Mr. Gross. May it please the court, your honors, to appreciate the invention disclosed in the 536 application, the ultrasound system. The invention must be considered as a whole, as this court's precedent requires. When this is done, it becomes apparent that the PTAB erred in combining the Burris, Allen, and Wilkins references to reject the claims. As stated in our brief, whenever a person skilled in the art combines Burris, Wilkins, and Allen, you still don't get to the claimed invention. More modifications, more redesigns are required in order to get to the claims, and those modifications, redesigns, and changes just aren't obvious. What are the missing elements of the claims if you take the three prior art sources for all their worth? Yes, your honor. To start with the Burris and Wilkins combination, we have an ultrasound cart with an articulating arm assembly that's supposed to support the flat film display screen. That's what the claims require, and there's a piston inside that articulating arm assembly. Now, which claims are you referring to, yours or theirs? So claim one. Of your application? Yes, your honor. Page A5. Okay, and it has, you identified two significant things, the locking mechanism and the articulating arm assembly containing the four bar linkage and piston, is that right? Those were the two significant changes. Correct, your honor. I was going to address the articulating arm assembly first, which the Patent Office found obvious in view of the Burris and Wilkins references. So let's take a step back and start from the right frame of reference. When you combine Wilkins and Burris, you don't get every claim feature. What's missing is an articulating arm assembly that supports a flat panel display. So after you combine the references, you still have to take that flat panel display, excuse me, the articulating arm assembly with the piston inside, and move it up from supporting a control panel, which is what's disclosed in Wilkins, move it up to support the flat panel display. Is that a difficult mental step? It is. It seems to me common sense would say if you're trying to deal with the object you're dealing with, that's what you do, you just apply their technology to your device. What's hard about that? So at first glance, your honor, it might seem like a simple modification, but when you look at the purposes of the invention, when you look at what the prior art discloses, it's not a simple change. There are some problems associated with that type of modification. It helps to understand a combined Burris-Wilkins device. What this would look like is a flat panel display screen supported by a four bar linkage with a piston inside, but that requires a release button to be pushed when moved. So in order to move the display screen, the release button is pushed, the piston is essentially deactivated, the sonographer has to support the entire weight of the display screen, move it, and then press the release again when the moving is finished. The claims require, this is claim one, A5 of the appendix, second to last limitation, the claims require an articulating arm assembly to which the flat panel display is connected for adjusting the elevation and lateral position of the flat panel display. That's the important language, your honor, because the piston has to be active while the screen is being moved. That's the point of the invention, that's the purpose, to make the flat panel display screen movable with the touch of a finger so the sonographer... So you did away with the button? Well, sorry, the claims do not require a button. Yeah, we did away with the release mechanism. Smart move, go ahead. So when the release mechanism is in there, the piston is effectively not active. So there's a redesign of a piston that permits the invention to move the flat panel display screen with the touch of a finger. That's only half the story. The other half of the story is the interarm locking mechanism, which is disclosed later in the claim. In producing a flat panel display screen that is so easily movable, the claims create a new problem, which is when moving the cart through the halls, the flat panel display can move and possibly injure someone if it's not stowed properly. The claim solved that problem by introducing the interarm locking mechanism to stow the two arms of the articulating arm assembly together during transportation. So we have the changes that need to be made with the four bar linkage and the piston. We have the changes that need to be made with the interarm locking mechanism. And we're not talking about a minor common sense set of changes here. This isn't a KSR situation where we have an adjustable foot pedal assembly and according to the Supreme Court, the only thing that isn't disclosed in the prior art is where to put a sensor. But the prior art still discloses, it says don't put the sensor on the foot pedal, put the sensor on something that's fixed and the person skilled in the art can make that leap. And the Supreme Court found that was an obvious change to make. We're not talking about those types of changes here. We're talking about a redesign that has to happen to the piston. Can I ask you, where in your brief in particular, and I guess same question for where before the board, did you make the argument that you're making about the piston in Wilkins not operating in such a way that it would accomplish the controlling elevation and lateral motion? When you start moving that stuff, you deactivate the piston. This all traces back to the release mechanism as I mentioned earlier. And that release mechanism in Wilkins was discussed in prosecution. It was discussed in the opening brief. It was discussed in the reply brief. So for example, in the prosecution's appeal brief at A293, that paragraph discusses the problems with Wilkins that arise from using a release mechanism. It says the piston 60 in Wilkins is a hydraulic piston which provides no counterbalance for the weight of the control panel. Well, that's the whole problem. That's the root of the issue with combining Wilkins with Burris. It defeats the purpose of the invention actually to have Wilkins incorporated into Burris without further changes. Do I misunderstand that that prior art disabled the piston when it was in operation? You're correct, Your Honor. The Wilkins prior art, when moving the screen, in order to move the screen after you've already moved it up from supporting the control panel to support the display screen, you have to press a release which takes the piston out of play. That's why the thing can move, the display screen can move. And in your blue brief, where did you make this? Sure, at page 13 through 14. That's where Wilkins is described for the first time. It talks about the lift release which can be a foot pedal, it doesn't have to be. Page 24, the foot release, the lift release is discussed again. I guess I did not understand from any of that material that you were making an argument that Wilkins is distinguishable because the role of the piston there is not such that even if you attached it to the flat panel, it would not perform the function required by your claim, namely the controlling of the elevation and lateral position. It's in the reply brief as well, pages 4 through 5. I think the argument you just made is made in that portion of the reply brief. Can I ask, I think you suggested something about the absence of a motivation to combine. I guess I was thinking along these lines. Putting aside whether you properly presented an argument to the board about long felt need, you do insist now that there was a need. There was this problem that people recognized. Taking that as an acknowledgment, then the need is you want to be able with this lighter screen than the old cathode ray tubes to be able to position it so that the patient can see it more easily. Once you have that now acknowledged need, why doesn't the rest of this follow pretty simply actually from these other pieces of prior art? There's a piston that serves essentially to counterbalance weight. There's an arm that articulates in a particular way that's probably used on any number of things. You use it for this particular purpose. If you're going to move the whole cart around, you presumably don't want things wobbling around. In some way or other, make it so that it doesn't wobble. What more is there to this? Unless you start with the acknowledged need or interest anyway in having a screen that can be positioned more comfortably over the patient. The need in the prior art was only partially solved by Burris. This need was identified in 1997 in the Burris reference. We need smaller display screens, lighter display screens, more easily manipulatable display screens. Nothing happens for seven years. If it was that simple to make these changes to combine the prior art to produce the type of ultrasound machine that's in the claim, someone should have done it. These references at first glance appear to solve part of the problem, do solve part of the problem, but it's when you get down into the nitty-gritty details of these references is where you see the value of the invention. Sure, it would be great to have a display screen that moves easily when someone uses the touch of a finger to move it. It would be great to have something that stows easily, but someone still had to figure that out and invent that. The prior art references, even when combined, aren't there. There's more that's left to be done. You quarreled with the use of Allen to demonstrate an interlocking, an interarm locking mechanism, because Allen Hesed deals with TV dishes. Your argument, as I read it, was that you were focused on ultrasound equipment. Is that right? Your inventor was dealing with ultrasound equipment. Would you make that same objection if the Allen mechanism had a prior art established in dealing with a portable x-ray machine, not a portable ultrasound, but a portable x-ray machine? Would that be the same problem from your viewpoint outside the realm of analogous art? Your Honor, we aren't arguing that a person skilled in the art would never look to the microwave dish field when trying to design something in the ultrasound field. Similarly, we wouldn't argue that someone in the ultrasound field would never look to an x-ray cart field. What we are arguing is that this is a matter of degree, and we're trying to figure out what a person skilled in the art would look at. We're already one step removed, well, multiple steps removed, because we're already dabbling in the microwave dish field. On top of that, this Allen reference doesn't mesh with the Burris reference. I'm still trying to figure out how you would adapt the Allen reference and make it fit in the Burris reference. I think it would be easier for a person skilled in the art just to start from scratch and try to design a locking mechanism on Burris without starting from Allen. When you combine the fact that Allen is in the microwave dish... I didn't understand that the point was you have to start from the prior art reference, you learn from the prior art reference. Do I misunderstand that? No, that's correct, Your Honor, but I'm not sure what you would learn from the Allen reference when trying to work it into the Burris reference. The inventions, or the disclosures, are just not compatible. Allen deals with a three-legged base where the three legs fold up against a central column. The claimed invention requires two arms of an inter-arm assembly to lock together, to lock to each other. They're just different locking mechanisms. That's why a person skilled in the art wouldn't look to Allen. He can learn whatever he wants from Allen, but it's not going to help him get to the claimed invention. Okay. Okay, let's save you a little time and let's hear from the office. Mr. Hickman? Thank you, Your Honor. May it please the Court. It would be helpful, I think, but let's focus on what I think is their strongest case, and that's whether the Allen reference is analogous, and that's whether one would look to microwave support for obvious combinations. Sure. Allen is not as far away from the claimed invention as I believe the appellant has suggested. Well, it isn't a matter of how far away, it's whether that's where one would be reasonably expected to look. And one of ordinary skill in the ultrasound card field would be expected to look at an invention such as Allen, and the reason goes back to the claim language. This case begins and ends on the claim language. There is nothing in the claim that's required other than an inter-arm locking mechanism. There's no particular structure that's required for that locking mechanism. It's anything that can lock two arms together, and Allen teaches exactly how to do that. But how does one know to look there unless you look and see what they do? This is standard hindsight argument, and see where you can find it. I don't believe it's hindsight here because, again, we're thinking about when a person of ordinary skill, at the time of invention, all this person of ordinary skill was thinking about was how to lock two arms together. The Allen reference is precisely on point. And it's not hindsight if you have a reference that teaches how to perform a particular function, and in the claimed invention, that component is doing the same thing that it was doing in the prior art. I think the icon case, which was cited in the red brief, is perfectly analogous to this case, and it was the same sort of situation there where the claimed invention was a treadmill that could fold up. The prior art reference was a folding bed. The folding treadmill brought out a spring, and the court said we have very broad claim limitations that we're dealing with here. There's really no bleep between a treadmill and a folding bed. There's nothing about the broad claims that makes them particular to a treadmill, and I think that's what we have here. The preamble of the claim recites an ultrasound system, but if you look at all those components that are recited after that, there's really nothing that's terribly unique to an ultrasound cart. It's essentially a cart that has computer equipment on it. It has a flat panel display screen. It has a locking mechanism, and it's portable, and that sort of device could be used in many other sorts of environments other than a hospital or in the medical field, and so that's why the Allen reference, again, is it's not very far away from what we're dealing with here. All the person of ordinary skill was confronted with is how do I lock these two arms together, and that's exactly what Allen teaches how to do. Can you address the point about the Wilkins piston not serving the function claimed here because it doesn't support the control panel while the thing supported is in motion? Sure. The answer to that, again, goes back to the claim language, and all that's recited in the claim is a piston. Any sort of piston would do. There's no particular structural feature that that piston requires. Wilkins teaches one of ordinary skill in the ultrasound cart field that a piston is something that can be used to support and move a component in an ultrasound cart, and that's exactly what the piston in this invention, in Murkowski's invention, is doing, and so I think that's a classic KSR situation where you have a predictable use of the prior art component, and it's doing the exact same thing that it was doing in the prior art. Is there something unique about ultrasound equipment in the context of a hospital's need for portability on a cart compared, for example, to an x-ray? I've had the misfortune of having had to have a portable x-ray machine brought in. I didn't even know they had these things, but they bring it in on a cart. It has all kinds of articulating arms and stuff. Is there something about an ultrasonic monitor and power station that makes it different from other kinds of portable equipment that's used in the hospital setting or outside of the hospital setting? I don't see any difference described in this application, and I think the claim is indicative of that. If there were special features that this particular cart needs that's unique to ultrasound systems, presumably those would have been recited in the claims, and we just don't have that here. All we have is any ordinary piston and any ordinary mechanism to lock two arms together. I'm going to ask that same question of your fellow counsel to find out if maybe we're missing something. For all those reasons, we believe the rejection is sound, and unless there are any further questions, we would ask that the rejection be affirmed. I'm sorry, can I just ask one more time? In Wilkins and the piston, you said, I think, when I asked you before, that the piston there is working when the control panel is in motion. Is that true? As opposed to holding it in place once it's put in position. What's happening in Wilkins is there's a piston, and it's supporting the keyboard or the control panel when it's in place, and then when the keyboard is moved up and down, the piston is unlocked, and it allows the keyboard to move up and down. So, it's supporting the keyboard in Wilkins. In Murkowski's invention, in this application, the piston is, at least at a broad level, it is, we think, supporting the flat panel display screen. But again, in claim one, in this only independent claim that's at issue here, we don't, we're not told what it is about that piston that distinguishes it from what's going on in Wilkins. We're not, nothing is claimed other than essentially a garden variety piston. So, I think our position is not, it's not that we shouldn't take this sort of blinkered view as to whether we would literally fuse the piston in Wilkins together with the cart that's claimed in this application. It's what would Wilkins teach to one of ordinary skill about pistons and ultrasound carts and what they can be used for. And on this particular claim, all we have is a piston that's used somewhere in that four bar linkage to support the flat panel display. Wilkins, I think, easily teaches one of ordinary skill that certainly a piston is a natural candidate for performing that function. So, what is the position of the office with respect to the issue that this is not, I mean, it's clearly not, the facts are not that much like the facts of KSR. The piston serves a somewhat different, more advantageous purpose. One of the claim elements, there is an issue as to whether it is or isn't analogous. Is the position of the office that any such doubt must be resolved against the applicant? Or what line does the office draw for itself in reaching a conclusion that anybody could have put this together the way this applicant did? The fact that, as your friend explained, they didn't do so for many years, even though the need was clear. You say that that's irrelevant or what? Secondary consideration certainly would be relevant. And maybe this application would have been different if the secondary consideration arguments had actually been made before the agency, but they were never made. There was no argument presented to the agency. There was no evidence that was called to the agency's attention to support any long felt need arguments. And so the agency was never given an opportunity to take that long felt need argument into account. But it was undisputed that nothing had happened in this art until this applicant came along. Are there inferences that can't really be argued with on such a situation without coming to say that, oh, now everybody's buying this cart because it's better? Well, I think there are two aspects to the response to that. Number one, I think Murkowski now, before this court at least, is relying on Burris' discussion of supposed need for a more easily maneuverable cart. But there's still no argument as to whether there was any need that existed after Burris. Murkowski criticizes Burris for not completely solving the problem, but there's nothing, frankly, but attorney argument that supports that assertion. Do I hear you saying that the rest of my convoluted question about how these elements are combined with hindsight would be different if they had provided additional evidence of market success? I agree that perhaps if there were additional, if there were actually arguments and evidence that were made, then maybe the case would be different. But I don't think we can say that solely because there's an argument that there was time that went by between the need, I guess, essentially the need existing and then Burris and then this invention coming along. The mere fact that time went by when there was no argument made before the agency and the agency was never asked to even consider that. Are you saying that differences from the art are to be ignored unless there is additional evidence that the consumer gave weight to those differences as opposed to some sort of standard analytic position of the office as to how differences are viewed? Not at all. It's not the office's position that the differences in the art should be ignored whatsoever or that there would have been any additional burden on the applicant to prove that. But the position here on this particular application is that we are presented with very broad claims and the examiner easily found references that taught precisely those components performing the same functions. And so the office examined the claims that were before it. Is the Murkowski designed cart on the market? As far as you know, is there evidence of market activity? I don't know one way or the other whether this Murkowski's cart is actually on the market at this point. But what you're saying is there was no evidence before the board or the examiner? There was no evidence and there was no argument that was made before the agency about that. The patent application needs to be filed before the device is in use or known to the public. So how does one, if this kind of evidence is dispositive ordinarily, I don't know ordinarily but often enough, the market hasn't had a chance to weigh in on its evaluation of the change? Not necessarily, but again, we would have no way of knowing what the market's view was on the success or the importance of this particular cart. That's why I want to know if doubt is to be resolved against the applicant, if that's the office's position. No, there's no categorical rule that the office would resolve doubt against the applicant. The statute says the applicant shall have the patent unless, isn't that a categorical instruction, a statutory instruction that that's resolved in favor of the applicant? The statute certainly says that an applicant is entitled to a patent unless the office finds that there are reasons that it's not patentable. That being said, at the end of the day, the office still has to take the claims that are presented to it and to view the record that the applicant creates before the office. I see my time is up, so unless there are any further questions. Any more questions? Okay. Thank you, Mr. Hickman. Mr. Burrows. Two quick points. Would you answer my question, the question I posed to counsel, Mr. Hickman? Is there something unique about this ultrasound cart, or would it be usable for other kinds of devices, like an x-ray, portable x-ray equipment, that sort of thing? There is a unique design for the locking mechanism and for the articulating arm assembly that supports a flat panel display screen. But that flat panel display screen need not necessarily be an ultrasound screen. It could be for some other technology. Is that correct? I would agree with that, Your Honor. But this particular invention is about more than moving an articulating arm assembly. I ask that question, I'm trying to think of what analogous art would be and whether we're limited to art that only deals with ultrasound equipment or whether we're dealing with art that deals with portable carts. I think art could be broader, such as you suggest. But once you get to the microwave dish field, you're getting farther and farther removed to where we're in a whole different realm. I interrupted your two points. The first point is the claims can't be viewed as simply having a piston in an articulating arm assembly that is attached to a flat panel display. There is some additional detail in the claims that says the flat panel display has to, the support has to be provided while the flat panel display is moved laterally and while there are changes in elevation. It's this additional function, this additional requirement that causes all the problems with moving Wilkins up to, the Wilkins articulating arm assembly up to support the flat panel display. The second point is the locking mechanism also has some more detail associated with it. This isn't just about locking two arms together. This is about locking two arms in an articulating arm assembly together while they support a flat panel display such that they are stowed in a direction that is in line with the direction of travel. So reading these limitations in a vacuum such as the patent office's approach seems to be is not the proper analysis. These claim limitations have to be considered as a whole. The invention has to be considered as a whole. And when this is done, it becomes apparent that the claimed invention is a significant improvement over the prior art, even when those references are combined. Can I ask you one question? You have not made separate arguments for particular claims. In particular, you have not said even if claim 1 was properly rejected, claims 11 and 12 weren't? Yes, Your Honor. So the reason for that is claim 1, claims 10, 11, and 12 all require this counterbalancing from the piston. While claim 1 doesn't specifically mention counterbalancing, a person with skill in the art would know that under this design, that's the purpose of the piston. That's why it's there. When that claim is read in light of the specification, that's the only purpose that the piston has in this invention is to provide support for the flat panel display. As the patent office says in footnote 1 in claim 17, excuse me, on page 17 of their brief in footnote 1, the primary difference between independent claim 1 and the dependent claims 10 through 12 is recited in claim 12. And that is simply that there is a pneumatic piston that provides a balancing counterweight force while the second arm of the articulating arm assembly is in a horizontal position. The patent office does not, based on this footnote, believe there is any difference between claims 1 and 10, for example. And the only difference between claims 1 and 10 deals with the further specificity of the counterbalancing provided by the piston. But do you agree with that position? I agree that claims 1 and 10 through 12 all require the piston to provide a counterbalancing force. Even though it's not stated in claim 1 explicitly? Well, I believe it is. The word counterbalance isn't stated in claim 1 specifically. But when the claim is read, when the movement of the flat film display… The function is the same. Yes. Okay. Any more questions? No questions. Any more questions? Okay. Thank you. Thank you, Mr. Morales and Mr. Hickman. This is taken under submission. That concludes the argued pieces for this morning. All rise.